Loring, J.,
delivered tlie opinion of tlie court:
John Frank Pargoud was a claimant here under the act of 12th March, 1863, for the net proceeds of eighty-five bales of cotton, alleged to have been taken from his possession in the summer of 1865 by the United States. His petition stated that he had participated in the guilt of the rebellion, but that in January, I860, he had been pardoned by the President and had complied with the formalities required by the proclamation of amnesty, of May 25, 1865.
A motion to dismiss the petition was filed, and on the hearing it was ordered that the petition be dismissed. A motion for an appeal was then made and argued, to which the special counsel for the United States objected, that it was without right; and the question is, whether there is an appeal to the Supreme Court from judgments of this court in cases arising under the act of 12th March, 1863.
The fifth section of the act of 12th March, 1863, submits the cases arising under it to the Court of Claims, to be decided “ on proof to the satisfaction of said court.'' This peculiar phrase is familiar to our legislation, and from early times its precise signification has been fixed by the usage of the departments and by repeated decisions of the Supreme Court. And it has uniformly been held to describe an exclusive and final jurisdiction from which there was no appeal.
On the 28th of August, 1819, Attorney Generifl Wirt, in an oficial opinion rendered to the Secretary of the Treasury, thus states the question submitted to him: “ Whether the pre-emption claims can be ascertained and decided upon by any other agency than that of the registers and receivers of the land districts in which they are situate?” and the Attorney General answers thus: “ I think not. The power is expressly given to them without any power of revision elsewhere. The language of the law is, that ‘in every case where it shall appear to the satisfaction of the register and receiver of public moneys of the Land Office that any person who has delivered his claim of notice is entitled, according to the provisions of this act, to a preference, such person so entitled shall have a right to enter the same on his producing a receipt from the receiver,’ &c.; 1 vol. Op., 291.” And the Attorney General italicizes the words, “ to tlie satis *351 faction of the register and receiver,” &c., as indicating tbe grounds of his conclusion.
The act of 29 th May, 1830, empowered the Commissioner of the General Land Office to prescribe rules for the register and receiver.' And on a like question, arising under that act, Attorney General Butler, in an official opinion rendered to the Secretary of the Treasury, April 21, 1836, 3 vol. Op. 93, said as follows : “ In an opinion bearing date the 28th of August, 181.9, the Attorney General decided that under the pre-emption law of the 5th of February, 1813, the power of ascertaining and deciding on the facts which entitle a party to the right of preemption was exclusively vested in the' register and receiver of the land district in which the lands were situated, without any power of revision elsewhere. The language of the law on which this decision was made is very nearly the same with that of the act of the 29th of May, 1830, on which your questions arise. The proof of settlement or improvement is in each case to be made to the satisfaction of the register and receiver; the only material difference is, that by the act of the 29th of May, 1830, such proof is to be made agreeably to the rules to be prescribed by the Commissioner of the General Land Office for that purpose.’ ” This, however, in my judgment does not vary the matter. The Commissioner of the General Land Office is to prescribe in advance such general rules in regard to the mode and nature of the proof to be made as he sháll think suitable; and those rulés are to be observed and conformed to by the register and receiver. But the proof adduced in conformity to such rules is in each case to be received, considered, and decided on, by the register and receiver. In weighing the evidence and in deciding on its efficiency, these officers act in a judicial capacity; if it proves to their satisfaction that the settlement and improvement required by law have been made, they must allow the entry; if it tails to satisfy them of those facts, they must disallow- it. The law has not authorized any other officer to reverse or revise their decision; nor can they be compelled to decide according to the dictates of any judgment but their o wn.”
And this view of the law was affirmed by the Supreme Court in the case of Little v. The State of Arkansas, (9 How., 314, 1849,) where the court say: “ The register and receiver were constituted by the act a tribunal to determine the rights of those who claimed pre-emption under it. From their decision no appeal *352 was given. If, therefore, they acted within their powers as sanctioned by the Commissioner and within the law, and the decision cannot be impeached on the ground of fraud and unfairness, it must be considered final.” (See, also, Wilcox v. Jackson, 13 P., 498.)
So the law was held that receivers and registers under the words, “ on proof to their satisfaction,” had an exclusive jurisdiction until by statute July 4,1836, § 1, their .action was subjected to the supervision of the Commissioner. In Barnard’s Heirs v. Ashley’s Heirs, 18 How., 43, 1855, the Supreme Court said: “ In cases arising under the pre-emption laws of 29th May, 1820, and 19th June, 1834, the power of ascertaining and deciding on the facts which entitled a party to the right of preemption was vested in the register and receiver of the land district in which the land was situated, from whose decision there was no direct appeal to a higher authority.” And the court then refer to the act of 1836, and say that it “ modifies the powers of registers and receivers to the extent of the Commisioner’s action.”
The registers and receivers of the Land Office were officers of a department, and their official acts were in general subject, of course, to the revision and control of the head of the department. Yet it was held that they were removed from that revision and control as to matters which were to be found “ on proof to their satisfaction,” and made a tribunal of exclusive and final jurisdiction, from which there was no appeal.
So the words in question are used where from the nature of the tribunal there can be no appeal. As in the Act March 3, 1817, (3 Stat. L., 399,) by which an insolvent debtor of the United States may be discharged from the debt by the President “upon proof made to his satisfaction.” And again, in the Act 6 June, 1798, (1 Stat. L., 561,) wh ereby an insolvent debtor may be.released from imprisonment by the Secretary of the Treásury “onproof made to his satisfaction” that the debtor has made no fraudulent conveyance and is unable to pay the debt.
So the like words when applied to the district courts have the same effect. Thus, under the naturalization acts, those courts were to be “ satisfied” as to the alien’s residence$ and his attachment to the principles of the Constitution, &c., are to be made to “ appear to their satisfaction.” And in Spratt v. *353 Spratt, (4 Peters, 393,) tbe judgment of tbe district courts on tbe matters specified was beld to be final.
So again,tbe Aetl5 May, 1820, (3 Stat.L., 592,) “providingfor tbe better organization of tbe Treasury Department,” authorized tbe agent of tbe Treasury to issue a warrant of distress against a receiver of tbe public money, in default in accounting for, or paying over, money be bad received. And its 4th section provided that any person aggrieved by such warrant might apply to tbe district court for an injunction to stay proceedings on tbe warrant; and it authorized tbe judge to add damages to tbe amount of the warrant, if “ on dissolving tbe injunction it shall appear to the satisfaction of said, judge that tbe application for tbe injunction was for delay merely.”
Then tbe act provided for an appeal by tbe party aggrieved by tbe decision of tbe judge on these specified points, “ either in refusing to issue the injunction, or, if granted,, on its dissolution;” but it provided no appeal from tbe assessment of damages to be added to the amount of tbe warrant for tbe delay which was to be made to appear "to tbe satisfaction ” of tbe district judge. And an express specification in a statute of tbe powers of appeal excludes all others; or, as tbe rule is expressed by Justice Curtis : “ Tbe affirmative description of tbe appellate power of tbe Supreme Court contained in tbe judiciary act, implies a negative on tbe exercise of such appellate power as is not comprehended within it.” Curtis’s Digest, 273, citing Durosseau v. The United States, (6 Cr., 307,) so that the statute of 15th May, 1820, withholds an appeal from tbe matter to be shown “ to the satisf action” of tbe district judge, although providing for it on other matters.
It is obvious that as to receivers and registers of tbe Land Office, tbe President and tbe Secretary of tbe Treasury, there was no general statute giving in express terms an^appeal from their decisions; but as to tbe district court there was for tbe act of 1863 (2 Stat. L., 244,) provided for appeals to tbe circuit courts, from final judgments and decrees of tbe district courts, as tbe act of 3d March, 1863, provided for appeals to tbe Supreme Court from tbe final judgments ánd déCrees of' this court.
Tbe 5th section of tbe act of 12th March, 1863, by referring cases under it to this court, submitted them tó tbe usual modes *354 of proceeding here and to tbe powers with which this court is invested. But we think, on the authorities cited, that in the further provision that the cases should be decided, “ on proof to the satisfaction of said court f it used that peculiar phrase, as from early times it has been uniformly used in Congressional enactments, to create a' final and exclusive jurisdiction from which there was no appeal. And if the phrase used has that significance, then there is no room for argument or inference 'or question of jurisdiction or powers, for Congress has, in express terms, provided that the decisions here should be final.
And such is the effect of the phrase when its words are taken in their ordinary meaning; for, as was said in the opinion read by the Chief Justice in the case of Celestine Eslava, no other tribunal could judge what proof was sufficient to satisfy the minds and consciences of this. And we now affirm the decision made in the case of Gelestine Hslma, and we decide as a conclusion of law—
That claimants, under the áct of 12th March, 1863, have no right of appeal from the judgments of this court.
This case involves the effect of pardon and amnesty as well as the right of appeal under the act j and we are glad to know that our decision may be revised in the Supreme Court, and its error, if found, corrected there.
The motion for an appeal is overruled.